# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2059

AIDA FOOD AND LIQUOR, INC., and EASSA FAKHOURY,

*Plaintiffs-Appellants*,

*v.*

CITY OF CHICAGO, a municipal corporation,
JOHN ROBERSON, individually and in his capacity
as Department of Buildings Commissioner,
TIMOTHY HUTCHISON, individually and in his
capacity as Department of Buildings Assistant
Commissioner, DON GIBSON, individually and
in his capacity as Department of Buildings
Inspector, CECILE COFFMAN, individually and
in her capacity as Department of Public Health
Inspector, and LATASHA R. THOMAS, individually
and in her capacity as Alderman of the 17th Ward,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 4341—**David H. Coar**, *Judge*.

ARGUED JANUARY 20, 2006—DECIDED MARCH 3, 2006

Before FLAUM, *Chief Judge*, and BAUER and RIPPLE,
*Circuit Judges*.

FLAUM, *Chief Judge.* The Plaintiffs allege a scheme by City of Chicago ("City") officials to close Aida Food and Liquor and replace it with a retailer such as CVS or Walgreens. Plaintiffs filed a claim under 42 U.S.C. § 1983, alleging that various departments of the City wrongfully inspected Aida Food and Liquor multiple times, interfered with the store's liquor license, and refused to sell the vacant lot next to the business to plaintiff Eassa Fakhoury. Plaintiffs claim that this conduct violated their Fourteenth Amendment right to equal protection. The plaintiffs also argue that their Fourth Amendment rights were violated by two particular inspections because the investigator did not have valid consent to search, a search warrant, or probable cause to search. The district court granted summary judgment for the defendants. For the following reasons, we now affirm.

## I.  Background

Plaintiff Aida Food and Liquor ("Aida") is a family-run convenience store located at 7923 S. Halsted St. in Chicago. It is owned by plaintiff Eassa Fakhoury. In June 2000, Fakhoury received a letter from the City of Chicago Department of Planning and Development, which indicated that the department intended to take his property by eminent domain as part of a redevelopment project along 79th Street. After receiving that letter, Fakhoury heard nothing more about the matter.

The City conducted inspections of Aida several times in 2001 and 2002. The City claims that the inspections were only as frequent as necessary to ensure that public health standards were met. Plaintiffs claim that these frequent inspections of both his store and the Chinese restaurant that was a tenant in his building were an attempt to cause one or both of the stores to go out of business. This would force Fakhoury (or his creditors) to sell the property at a reduced price. Plaintiffs also claim that defendant Chicago

Alderman Latasha R. Thomas would like the property sold to Walgreens or CVS, which Fakhoury believes is the overall goal of the scheme.

The first documented inspections of Aida were conducted by Cecile Coffman, an inspector for the City's Department of Public Health. Plaintiffs have shown evidence that she inspected Aida five times between January 2001 and December 2002. The inspections occurred approximately every six months, as required by the Chicago Municipal Code in § 7-42-010. The record also reflects that there were follow-up inspections after visits where citations were issued. Such follow-up inspections are required by the rules and regulations of the Chicago Board of Health.

In early 2002, the Mayor's Office requested that the Department of Buildings conduct an area survey of all buildings on Halsted Street from 55th to 95th Streets. Aida was within this survey area. On February 22, 2002, Department of Buildings Inspector Kevin Callahan conducted an inspection of Aida as part of this survey. Inspector Callahan discovered a number of building code violations and issued citations. He did not conduct a complete electrical inspection of the property because he was not an electrician; however, some of his citations concerned the electrical conditions inside the store.

The City sued Plaintiffs in state court based on those citations. On August 16, 2002, an Illinois circuit judge entered an order requiring Plaintiffs to schedule and be present for an interior inspection of the premises with the Department of Buildings. The order also continued the matter until October 11.[1]

---

[1] Although Aida claims that the order states that Plaintiffs were not required to make repairs until October 11, the record reflects that the order merely continued the matter until October 11. The order is silent as to when repairs must be made.

On August 22, 2002, Commissioner John Roberson ordered an electrical inspection at Aida, according to his deposition, because he had received a citizen complaint about unsafe electrical conditions in the building.

Donald Gibson, a Department of Buildings Inspector, was dispatched to Aida, found Fakhoury, and revealed that he was an inspector for the City. He stated that he wished to perform an electrical inspection of the store and asked for permission to do so. According to Fakhoury's own deposition, he consented to the search, and asked one of his employees to take Gibson to the back of the building. Gibson observed dangerous open electrical boxes, and he told Fakhoury that the power would need to be shut off.

Inspector Gibson did not have the authority to shut off the power himself and needed approval from one of his superiors. Milton Patterson, the Assistant Commissioner of the Department of Buildings, reviewed Gibson's report and agreed with Gibson that dangerous conditions existed at the site. Patterson contacted Commonwealth Edison ("ComEd"), Aida's electric company. Patterson asked ComEd to perform an independent inspection of the property with Gibson.

On August 28, Gibson returned to Aida, accompanied by two individuals from ComEd.[2] Plaintiffs' complaint and Fakhoury and Gibson's deposition testimony are silent as to the circumstances surrounding Gibson's entry into the store that day. Once Gibson and the two ComEd inspectors were inside, the ComEd inspectors believed that there was evidence of theft of electrical service and that

---

[2] Plaintiffs dispute ComEd's involvement in the second inspection. As the district court noted, Fakhoury's own deposition testimony contradicts the argument. In any event, the issue is irrelevant to our holding today.

unsafe conditions existed. The ComEd inspectors turned off Aida's power supply.

It is also undisputed that at some point during these two encounters, Gibson called the police and asked them to come to the store. Fakhoury, in his deposition, claims that this occurred on August 28, approximately twenty minutes after Gibson entered the store. Gibson testified at his deposition that he contacted the police on August 22 to ensure that Fakhoury complied with Gibson's order not to allow members of the public into the store until the electrical conditions were repaired.

Fakhoury had problems getting the necessary permits to allow him to repair Aida's electrical problems. On September 24, an Illinois circuit judge granted Fakhoury the right to begin electrical work on his store. The city never issued an official permit for the work, which Plaintiffs argue directly violated that order. The record shows that the order allowed the work to go forward without a permit, however, and did not require that the City issue one.

Plaintiffs also allege that the City caused Aida's liquor license to be revoked. The records of the Mayor's Licensing Commission indicate that Aida's liquor license is in good standing and that the City has not sought revocation. Plaintiffs claim that the license is listed as "not in good standing" and Aida must go through additional administrative procedures two times per year to maintain its temporary liquor license. Plaintiffs concede that Aida's liquor sales have continued uninterrupted.

Plaintiffs also allege that they have made attempts to purchase an empty lot next to Aida, which is owned by the City, and have not been allowed to do so. Before selling property to a particular buyer, the City looks to the alderman of the ward in which the property is located for a recommendation on which buyer would be most preferable. Fakhoury contends that he has contacted Alderman Thomas

about the lot, but the City has not yet sold it to Fakhoury or anyone else. Fakhoury contends that Alderman Thomas wishes to sell the property to a large retailer and thus will not allow him to buy it.

Plaintiffs sued under 42 U.S.C. § 1983 for Fourth Amendment violations, Fifth Amendment procedural due process violations, and a "class of one" equal protection claim. The district court granted summary judgment to the defendants. The court found that the inspections were not outside of the scope of the statute and were not excessive. The court also found that because Fakhoury consented to the August 22, 2002, search, no Fourth Amendment violation occurred. The court ruled against plaintiffs on the procedural due process claims, pointing out that the plaintiffs could, and did, receive review of the City's actions in state court. Finally, the district court granted summary judgment on the "class of one" claims, noting that Plaintiffs had not supported their assertions of animus with any evidence, or shown that the City had treated similarly situated stores in a different manner.

Plaintiffs have appealed the summary judgment rulings on the Fourth Amendment claims related to the inspections on August 22 and 28, 2002, and the equal protection claims related to the liquor license and the vacant lot.

## II. Discussion

### A. Fourth Amendment Claims

Plaintiffs complain that the district court did not properly address whether Fakhoury's consent was valid during Inspector Gibson's August 22, 2002, inspection, and did not address the August 28, 2002, inspection at all. The City argues in response that Fakhoury's consent for the August 22 search was valid. The City also claims that the plaintiffs

have waived the argument concerning the August 28 inspection because they did not raise it below. Even if the issue was not waived, the City contends, Fakhoury consented to the August 28 inspection.

Plaintiffs argue, first, that under the totality of the circumstances, it was apparent that Gibson was not there to perform a "legitimate inspection" on August 22; therefore he exceeded the scope of Fakhoury's consent, which was only for a "legitimate inspection." This argument fails for several reasons, one of which is that Fakhoury has not created a genuine issue of fact that Gibson's inspection was not "legitimate."

The City has produced evidence, in the form of Commissioner Roberson's deposition testimony, that Gibson's investigation was the result of a citizen complaint, while Fakhoury has produced only vague allegations otherwise. Fakhoury's only evidence that the search was illegitimate was his deposition testimony that Gibson stated during the search that he intended to shut down the store. The evidence, including Gibson and Fakhoury's depositions, shows that Gibson said this *after* he had observed the electrical violations. The statement was not a threat—it was made to inform Fakhoury that his power supply was about to be terminated. The Plaintiffs' evidence is insufficient to support the notion that Gibson's inspection was not "legitimate." The district court was correct when it ruled that Fakhoury's consent to inspect on August 22 eliminated any Fourth Amendment claim for that incident.

Plaintiffs also argue that the district court erred because its ruling did not address the August 28 inspection. It is true that the district court did not address the argument, but we believe that this is because the argument was not adequately raised before that court. Nowhere in Fakhoury's complaint is the August 28 inspection mentioned. Two

paragraphs in the complaint discuss the August 22 search, but none refer to Gibson's follow-up visit on August 28.

Plaintiffs argue that their complaint did address the August 28 inspection, because the complaint alleged that "Defendants deprived Plaintiffs of their Fourth Amendment rights . . . by inspecting their store since the Fall of 2000 and by shutting down the store." This allegation is too broad to alert either the district court or the opposing party to the current claim regarding the August 28 inspection. Plaintiffs' reference to "shutting down the store," is easily interpreted as referring to the consequence of the electrical inspection and not the inspection itself. Plaintiffs also argue that the August 28 search was mentioned in passing in the plaintiffs' response to defendants' motion for summary judgment. Even assuming that this passing reference plead the incident with particularity, which it does not, a response to summary judgment is hardly a timely filing in which to raise an issue.

The argument is waived. Appellate courts will not hear issues that were not clearly raised in the trial courts, so as to give all litigants the opportunity to develop the relevant facts during discovery. *Boggs v. West*, 188 F.3d 1335, 1337-38 (Fed. Cir. 1999). At best, this argument was raised in so perfunctory a fashion that the district judge was entitled to disregard it. *Nat'l Metalcrafters v. McNeil,* 784 F.2d 817, 825 (7th Cir. 1986). The City was not given an adequate chance to develop its factual case with respect to the August 28 inspection. This is evidenced, for example, in Fakhoury's deposition, where he was questioned extensively about the circumstances of Gibson's entry to the store on August 22, but was not asked about whether Fakhoury gave Gibson permission to enter on August 28. This is an illustration of the reason that claims must be properly raised in the initial pleadings.

Plaintiffs also argue that, at the least, the district court should have allowed them to amend their complaint. We disagree. Plaintiffs have not shown that they ever moved to amend the complaint, and we can hardly expect the district court to grant such leave *sua sponte*.

### B. "Class of one" claim

Plaintiffs also assert a "class of one" claim based on the frequent inspections of the store, its liquor license status, and the City's refusal to sell Fakhoury the empty lot next to the store. In order to bring a successful claim under this theory, a plaintiff must show that he or she was (1) intentionally treated differently from others similarly situated and that there is no rational basis for that treatment, or (2) that the government is treating similarly situated individuals differently because of a "totally illegitimate animus" for the plaintiff. *Nevel v. Vill. of Schaumburg*, 297 F.3d 673, 681 (7th Cir. 2002) (citing *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001)).

Addressing the latter prong first, Plaintiffs have produced no evidence of animus, save Fakhoury's deposition testimony that many people in the community have told him that Alderman Thomas has "ill will" toward himself and his store. That testimony is inadmissible hearsay insufficient to create a genuine issue of fact.

"Class of one" claims can also be asserted if a plaintiff can show that he or she is being treated differently than those similarly situated. Plaintiffs have shown no evidence that they are treated differently than any other establishment. The only evidence produced demonstrates lawful inspections that adhere to the City's regulations. The City has not sold the vacant lot to anyone, so clearly no other potential buyer has been treated more favorably than the plaintiffs. And even assuming, arguendo, that Aida's liquor license has been listed as "not in good standing," the

plaintiff has made no showing that the City has actually prevented him from selling liquor. The district court properly dismissed Plaintiffs' class of one claim.

## III.  Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*

USCA-02-C-0072—3-3-06